1    BARRY J. PORTMAN
     Federal Public Defender
2    JOYCE LEAVITT
     Assistant Federal Public Defender
3    555 12th Street, Suite 650
     Oakland, CA 94607
4    Telephone:  (510) 637-3500

5    Counsel for Defendant QUIAZON

6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,          )     No. CR 07-00553 SBA
                                        )
11                     Plaintiff,       )     **DEFENDANT'S SENTENCING**
                                        )     **MEMORANDUM**
12   vs.                                )
                                        )     Date: April 29, 2008
13   RENATO GONZALEZ QUIAZON,           )     Time: 10:00 a..m.
                                        )
14                     Defendant.       )
                                        )
15   _____)

16

17                           **INTRODUCTION**

18          On December 7, 2007, defendant Renato Quiazon pled guilty to count 5 of the indictment

19   which charges him with a violation of 18 USC §1343 - wire fraud, and counts 24, 25, 26 and 27

20   of the indictment, which charge him with violations of 26 USC §7206(1) - filing a false tax

21   return.  Mr. Quiazon will be sentenced by this Court on April 29, 2008.  The parties entered into

22   a Rule 11(c)(1)(C) plea agreement in which they stipulate to an adjusted offense level of 20 and

23   a sentence of 36 months imprisonment.  Plea Agreement ¶8.  Meanwhile, United States

24   Probation Officer Constance Cook calculates the adjusted offense level to be 22, and

25   recommends a sentence of 41 months imprisonment.  PSR, Sentencing Recommendation.

26          Mr. Quiazon disagrees with the probation officer's assessment that an adjustment under

*U.S. v. Renato Quiazon*, CR 07-00553 SBA
Sentencing Memo                          1

1   USSG §3B1.3 is applicable in this case because Mr. Quiazon's position as a loan officer was not

2   characterized by "substantial discretionary judgment" nor did he possess a "special skill" similar

3   to a pilot, lawyer, doctor, accountant, chemist or demolition expert. *See* USSG §3B1.3,

4   comment. (n.1, 4.).  As set out in the Plea Agreement, the adjusted guideline should be 20, which

5   results in a guideline range of 33-41 months.  The parties agree that 36 months is appropriate.

6         However, even if the Court adopts the guidelines proposed by the probation officer and

7   adds the adjustment for abuse of trust resulting in a guideline range of 41-51 months, both the

8   government and Mr. Quiazon still believe that a sentence of 36 months imprisonment is

9   appropriate based upon the sentencing factors enumerated in 18 USC §3553.  Mr. Quiazon

10   submits this sentencing memorandum in support of his request.

11                    **BACKGROUND**

12       **A.**    **Offense Conduct**

13         At the time of the offense, Renato Quiazon was a loan officer employed by New Century

14   Mortgage.  PSR ¶7.  He was paid a base salary plus commissions for loans that he processed

15   through the company.  *Id.* at ¶8.  The offense conduct involved Mr. Quiazon creating a kickback

16   scheme with a mortgage broker so that he would get kickbacks for loans which he processed

17   through the broker.  PSR ¶¶10, 11.  Mr. Quiazon also took the proceeds from borrowers' escrow

18   accounts and obtained disbursement checks related to extraneous line items on the escrow

19   accounts.  *Id.* at ¶12.  Finally, Mr. Quiazon failed to report his income relating to fraudulent

20   kickbacks to the Internal Revenue Service for tax years 2001 through 2004.  *Id.* at  ¶15.

21       **B.**    **Personal background including diminished capacity and alcohol dependence**

22         Renato Quiazon is a Filipino man who first came to the United States when he was 24

23   years old and has lived in the United States with his family for over twenty years..  PSR

24   ¶¶47-49.  He has two grown children.  His daughter is a golf coach and his son is a materials

25   engineer.  *Id.* at ¶48.  He became a United States citizen in 1996.  *Id.* at ¶49.

26         Aside from the current offense, Mr. Quiazon, who is 54 years old, has no criminal

1  history, including no arrests. *Id*. at ¶¶43-46. He committed the offense after learning that his

2  wife had had an affair (her second in the marriage) and he felt pressured to try and provide her

3  with material things to keep her in the marriage. *Id*. at ¶19. Mr. Quiazon expressed shame and

4  remorse for his conduct. *Id*.

5      Mr. Quiazon has a history of depression and has been diagnosed with major depression.

6  *Id*. at ¶54. He has contemplated suicide on two occasions by placing a loaded shotgun in his

7  mouth. *Id*. His depression has been long-standing but most recently was due in part to dealing

8  with his wife's extramarital affairs. *Id*. He is not currently on medication and continues to

9  struggle with his depression. *Id*. at ¶54.

10     Mr. Quiazon's depression at the time of the offense is a relevant factor at sentencing.

11     Mr. Quiazon also has a history of alcohol and drug use. *Id*. at ¶56-57. He has admitted

12 that he has a problem with alcohol and he drinks daily. *Id*. In addition, he frequently uses pain

13 killers. *Id*. Mr. Quiazon also used marijuana which began in 2000 and quickly escalated to daily

14 use. *Id*. Mr. Quiazon is in need of a drug treatment.

15                                   **DISCUSSION**

16     **A.    An Enhancement for Abuse of Trust is Not Appropriate in this Case**

17 USSG §3B1.3 provides:

18          If the defendant abused a position of public or private trust, or used
            a special skill, in a manner that significantly facilitated the
19          commission or concealment of the offense, increase by 2 levels.

20 In addition, USSG §3B1.3, application note 1 defines "public or private trust" as follows:

21          Public of private trust refers to a position of public or private trust
            characterized by professional or managerial discretion (i.e.
22          substantial discretionary judgment that is ordinarily given
            considerable deference). Persons holding such positions ordinarily
23          are subject to significantly less supervision tha employees whose
            responsibilities are primarily non-discretionary in nature.
24
   Finally, USSG §3B1.3, application note 4 defines "special skill" as:
25
            A skill not possessed by members of the general public and usually
26          requiring substantial education, training or licensing. Examples

*U.S. v. Renato Quiazon*, CR 07-00553 SBA
Sentencing Memo                          3

would include pilot, lawyers, doctors, accountants, chemists and demolition experts.

In the present case, an enhancement for abuse of trust is not applicable because Mr. Quiazon's job as a loan officer did not involve professional or managerial discretion, nor was his judgment given "considerable deference."  As a loan officer, he was required to follow clear guidelines in a heavily regulated industry.  His role was similar to that of a glorified sales person and the decisions left to him were more ministerial in nature than discretionary.  For example, he could not set the terms of a loan except by following clearly delineated guidelines and procedures which were readily verifiable by anyone conducting minimal investigation.  In addition, the commission schedule was also determined by the company such that anyone looking over his documents and transactions would be able to readily verify whether he was deviating from set company standards and procedures - procedures which were created certainly not by him, but by upper management or the industry as a whole.  Mr. Quiazon's conduct is more comparable to embezzlement by a bank teller than it is to a fraudulent loan scheme by a bank executive because Mr. Quiazon was not an executive, did not make policy, and had no ability to hide behind "professional or managerial discretion."  USSG §3B1.3, comment. (n.1.).

Furthermore, Mr Quiazon did not possess a "special skill."  *Id*. at comment. (n.4.).  For example, no special license is required to become a loan officer and the required training does not rise to the level of the kind of training needed to become a doctor, pilot, accountant or other highly skilled professional.  Training to become a loan officer may take weeks but certainly not months or years.  As a loan officer, Mr. Quiazon did not possess a "special skill" as defined in USSG §3B1.3.

For these reasons, the probation officer was incorrect in applying an abuse of trust adjustment to the offense level.  PSR ¶26.  Although the probation officer reasoned that the enhancement applies because "the defendant was trusted by his employer at New Century to return 80% of the commission checks and to process the loans according to industry standards"

this justification supports Mr. Quiazon's argument that he was not in a position in which he was given "professional or managerial discretion." Rather, his job was ministerial in nature. Although his company expected him to follow the rules, such as returning 80% of the commission checks and processing loans according to industry standards, it is clear that the rules were clearly delineated and his job was to follow them. Anyone doing even minor investigation would have exposed Mr. Quiazon's illegal actions. Under these circumstances, an adjustment for "abuse of trust" should not be applied in this case.

### B.    A Sentence of 36 Months in Custody is Sufficient, But Not Greater Than Necessary, to Satisfy the Goals of Sentencing

After *United States v. Booker*, 543 U.S. 220, 260-61, 125 S. Ct. 738 (2005), the guidelines are no longer binding on the Court. *Booker* clarifies that the Guidelines are simply one of a number of factors a court must consider in imposing sentence. 125 S. Ct. at 764. In addition, courts are required to consider all of the factors listed in 18 U.S.C. § 3553(a) in imposing sentence. *Id.*

Furthermore, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States*, No. 06-7949, 552 U.S. __, 128 S. Ct. 586, 602 (2007)(finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States*, No. 06-6330, 552 U.S. __, 128 S. Ct. 558, 570 (2007)(noting that courts may vary from the Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines). Accordingly, the "Guidelines are not the only consideration, the district judge should consider all of the section 3553 factors" to determine the appropriate sentence. *Gall*, __U.S. __, 128 S. Ct. at 596. The primary directive in §3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. See 18 U.S.C. §3553(a).

In this case, even if the Court determines that an adjustment for "abuse of trust" is applicable, it should still sentence Mr. Quiazon to 36 months imprisonment. Some factors which

1   the Court should consider are discussed below.

2   **1.     Nature and Circumstances of the Offense**

3   Under 18 U.S.C. §3553(a), the Court should consider the nature and circumstances of the

4   offense in determining an appropriate sentence.  In this case, the offense is a serious one which

5   involves individual victims and a loss amount of $769,224.  Mr. Quiazon does not dispute that

6   the offense is serious.  However, given that Mr. Quiazon is 54 years old with no prior criminal

7   history, a sentence of 36 months in custody is adequate under the circumstances. Any higher

8   sentence would be greater than necessary.

9   **2.     The History and Characteristics of Renato Quiazon**

10   Under 18 USC §3553(a), the history and characteristics of Mr. Quiazon is a separate

11   factor for the Court to consider in fashioning a fair and just sentence.

12   The guidelines have long recognized that a below guideline sentence may be warranted

13   where someone commits an offense while suffering from significantly reduced mental capacity

14   which contributed to the commission of the crime.  *See, e.g.* USSG §5K2.13, p.s.; *United States*

15   *v. Cantu*, 12 F.3rd 1506, 1512, 1516 (9th Cir. 1993)(The goal . . .is lenity towards defendants

16   whose ability to make reason decisions is impaired); *United States v. Lewinson*, 988 F.2d 1005

17   (9th Cir. 1993)(even though drug use and even though mental disease not severe, drug use was

18   both "a product and factor of his impaired condition.").  Pre-*Booker*, the extent of the departure

19   reflected the extent to which the reduced mental capacity contributed to the commission of the

20   offense.  USSG §5K2.13, p.s.  For example, in *Lewinson*, the Court granted a four level

21   departure where the defendant's depression contributed to the commission of the offense.

22   Post-*Booker*, the Court should consider the extent of the diminished capacity as a factor under 18

23   U.S.C. §3553(a) relating to the history and characteristics of a defendant.  Mr. Quiazon's

24   depression played a role in his commission of the offense.

25   In addition, the other history and characteristics of Mr. Quiazon warrant a sentence of no

26   more than 36 months in custody.  Mr Quiazon is 54 years old with no other criminal history.  He

1   has raised two children who are also law-abiding and hard-working.  He has worked his whole

2   life to support his family and his decisions prior to his involvement in the current offense show

3   that he is law-abiding and has great respect for the law.  He is ashamed by his conduct and is

4   being punished even beyond any time he serves in custody.  A sentence of no more than 36

5   months custody is justified based upon Mr. Quiazon's history and characteristics.

6        **3.**        **A sentence of 36 months in custody is sufficient to show respect for the law,  just punishment, adequate deterrence and to protect the public**

7                           **or for training**

8   18 U.S.C. §3553 provides that the Court shall consider the need for a sentence to

9   promote respect for the law, provide just punishment for the offense and afford adequate

10  deterrence to criminal conduct.  18 U.S.C. §3553(a)(2)(A) and (B).  Furthermore, the Court is

11  required to consider the need to provide a defendant with needed educational or vocational

12  training or other correctional treatment in the most effective manner.  18 U.S.C. §3553(a)(2)(D).

13  A sentence of 36 months imprisonment  meets these objectives of sentencing.

14  For example, a sentence of 36 months is adequate to show respect for the law because

15  Mr. Quiazon has no criminal history and it is clear that he respects the rule of law.  He will not

16  be back before the Court again.  No greater sentence is needed to show respect.

17  A sentence of 36 months also provides adequate deterrence to Mr. Quiazon who already

18  has learned from his poor decisions.  He now has a felony conviction which will follow him for

19  the rest of his life.  He now loses many of the valuable rights which were given to him when he

20  naturalized in 1996.  His ability to get a good job will be more difficult and Mr. Quiazon's

21  conviction will be a constant reminder to him of his actions.  He needs no further deterrence.

22  Furthermore, a sentence of 36 months in prison is more than adequate to provide Mr.

23  Quiazon  with any "needed educational, vocational or other correctional treatment" because it

24  would enable him to complete the 500 hour program for inmates in federal custody and gain the

25  full benefit from that program.  *See* 18 U.S.C. §3553(a)(2)(D).  Given his drug history and

26  background, and the fact that he has not had any drug counseling, involvement in this program

1    would be helpful.  However, the program is 9 months long and Mr. Quiazon does not need a

2    sentence greater than 36 months in order to get the benefit of needed correctional treatment.

3    This is consistent with the sentencing factors.

4                                    **CONCLUSION**

5           For all of the reasons described above, Renato Quiazon respectfully asks the Court to

6    sentence him to a term of 36 months in custody, 3 years of supervised release, a $500 special

7    assessment and restitution.  This is consistent with the Plea Agreement and consistent with the

8    goals of sentencing.  Mr. Quiazon further asks that he be recommended for the 500 hour drug

9    program and be allowed to self-surrender to the facility to which he is designated.

10   Dated: April 24, 2008

11                                Respectfully submitted,

12                                BARRY J. PORTMAN
                                  Federal Public Defender
13
                                        /S/
14
                                  JOYCE LEAVITT
15                                Assistant Federal Public Defender

16

17

18

19

20

21

22

23

24

25

26